UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LORI HELING,

      Plaintiff,

v.

CREDITORS COLLECTION
SERVICE INC.,

      Defendant.

Case No. 15-CV-1274-JPS

ORDER

---

  The plaintiff, Lori Heling, filed her complaint in this case on October 26, 2015. (Docket #1). She alleges that the defendant, Creditors Collection Service Inc. ("CCS"), violated the terms of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* (*E.g.*, Docket #1 ¶¶ 1, 43).

  CCS moved to dismiss Ms. Heling's complaint, arguing that her claims are barred by the *Rooker-Feldman* doctrine (Docket #7 at 4–8) and claim-precluded (Docket #7 at 8–13). In light of that motion, Ms. Heling clarified her claims; she has made clear that she seeks relief for the following three alleged violations of the FDCPA:

  (1) that CCS misrepresented the "character, amount, and/or legal status" of the judgment against Ms. Heling that CCS was collecting;

  (2) that CCS incorrectly told Ms. Heling that the judgment against her could not be vacated; and

  (3) that CCS did not timely provide Ms. Heling with required written documentation regarding the debt.

(Docket #14 at 7 (citing Docket #1 ¶¶ 33–37, 40–43)). CCS has filed its reply brief, and maintains that those three claims are all barred by *Rooker-Feldman* and claim-precluded. (Docket #16). The matter is, thus, fully briefed and before the Court for resolution.

The Court begins by briefly describing Ms. Heling's factual allegations and claims.[1] In April of 2015, CCS sued Ms. Heling in Sheboygan County Circuit Court ("the Circuit Court") for an unpaid debt. (Docket #1 ¶¶ 14, 23). Ms. Heling allegedly never received actual service of summons in that case,[2] so CCS served her by publication and, ultimately, the Circuit Court entered default judgment against her in the amount of $390.09, which included a $50.00 attorney fee, a $44.46 service fee, and a $94.50 filing fee. (Docket #1 ¶¶ 15–22, 24). CCS then attempted to collect on that judgment by garnishing Ms. Heling's wages. (Docket #1 ¶¶ 25–26). At one point, CCS sent a Garnishment Notice to Ms. Heling's employers; that notice listed $396.14 as the outstanding judgment, $22.00 in post-judgment interest, and $122.50 as "[e]stimated costs of this earnings garnishment." (Docket #1 ¶ 26). This notice prompted Ms. Heling to contact CCS and its attorneys. (Docket #1 ¶ 27–32). During a phone call with CCS, Ms. Heling was informed that she owed $538.94, which was allegedly more than she actually owed. (Docket #1 ¶¶ 33, 34). At that point, Ms. Heling informed CCS that she was prepared to pay the

---

[1]CCS's motion to dismiss rests upon Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction insofar as it asserts that Ms. Heling's claims are *Rooker-Feldman*-barred and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted insofar as it asserts that Ms. Heling's claims are claim-precluded. Under both Rules, the Court must accept all well-pleaded factual allegations as true and determine whether those factual allegations plausibly state the existence of jurisdiction and a claim, respectively. *See Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015) (adopting *Twombly-Iqbal* "plausibility" standard for Fed. R. Civ. P. 12(b)(1) challenges to subject matter jurisdiction). With that said, the Court must also acknowledge that, in reviewing a factual challenge to subject matter jurisdiction, it may look to any evidence that has been submitted. *Id.* at 173. However, in this case, CCS has not submitted any evidence.

[2]Ms. Heling concedes that, in these federal proceedings, she cannot challenge the underlying state court judgment on the basis of inadequate service. (Docket #14 at 7). The Court references this allegation only to provide background.

judgment against her but would like to have the judgment against her vacated. (Docket #1 ¶ 38). CCS informed Ms. Heling "that it could not have the judgment vacated." (Docket #1 ¶¶ 39–40). Ms. Heling claims that, in taking these actions, CCS violated the FDCPA by misrepresenting the amount, character, and status of the debt she owed and incorrectly stating that CCS could not have the judgment vacated. (Docket #1 ¶ 43). She also claims that CCS still has not provided her with documentation that the FDCPA requires. (Docket #1 ¶¶ 42, 43).

In moving to dismiss Ms. Heling's claims, CCS argues primarily that the *Rooker-Feldman* doctrine bars them. In a nutshell, CCS's *Rooker-Feldman* argument is that Ms. Heling is attacking the Circuit Court's underlying judgment against her. (*See, e.g.*, Docket #8 at 4–8; Docket #16 at 2–8).

Indeed, under the *Rooker-Feldman* doctrine, "the Supreme Court of the United States is the sole federal tribunal authorized to review the judgments of state courts in civil litigation," *Iqbal v. Patel*, 780 F.3d 728, 729 (7th Cir. 2015), meaning that this Court cannot exercise jurisdiction "when the state court's judgment is the source of the injury of which plaintiffs complain in federal court," *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014). *See also Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005); *District of Columbia court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Richardson v. Koch Law Firm, P.C.*, 768 F.3d 732, 733–34 (7th Cir. 2014); *Nora v. Residential Funding Co., LLC*, 543 Fed. Appx. 601, 602 (7th Cir. 2013); *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 603–04 (7th Cir. 2008); *Taylor v. Ded. Nat'l Mortgage Ass'n*, 374 F.3d 529, 533 (7th Cir. 2004); *Epps v. Creditnet, Inc.*, 320 F.3d 756, 758–59 (7th Cir. 2003). However, it is not always easy to distinguish between claims that the *Rooker-Feldman*

doctrine bars and those it does not. That is particularly true when, as here, there is an underlying state court judgment also in play.

Several months ago, the Court encountered a very similar issue in *Andress v. Daubert Law Firm*, --- F. Supp. 3d ----, No. 15-CV-423-JPS, 2015 WL 7114627 (E.D. Wis. Nov. 13, 2015) (appeal currently pending before the Seventh Circuit, No. 16-1078). In *Andress*, as here, the plaintiff asserted FDCPA claims relating to underlying state court proceedings, and the defendants moved to dismiss those claims pursuant to the *Rooker-Feldman* doctrine. *Id.* at *2–*3. The Court provided an overview of the state of Seventh Circuit law, as concerns the *Rooker-Feldman* doctrine's application to FDCPA claims. *Id.* at *4–*6. Rather than rehash the entirety of its discussion, the Court provides its summary:

> In sum, as best as the Court can tell from Seventh Circuit law, there are two separate boxes into which FDCPA claims like Mr. Andress' might fall. The first of those boxes includes claims that directly challenge state court judgments or garnishment orders. The *Rooker-Feldman* doctrine clearly bars such claims. *See, e.g.*, *Harold*, 773 F.3d at 885; *Kelley*, 548 F.3d 600; *Epps*, 320 F.3d 756. The second box includes claims that might *relate* to a state court judgment or garnishment order, but that actually challenge a defendant's efforts to collect on that judgment or order, *see Richardson*, 768 F.3d at 733–34, or that occurred before and existed independent of the judgment or order, *Nora*, 543 Fed. Appx. at 602 (citing *Kelley*, 548 F.3d at 603–04; *Taylor*, 374 F.3d at 533). *See also Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 556 (7th Cir.1999) (where FDCPA claims did not challenge "propriety of the…[eviction] judgment," the *Rooker-Feldman* doctrine did not bar them); *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 645 (7th Cir. 2011) (even where claims might "involve questions related to those in the original state court proceedings," Rooker–Feldman does not necessarily apply).

*Andress*, 2015 WL 7114627, at *6.[3]

Likewise, in this case, the *Rooker-Feldman* question boils down to: into which of those two "boxes" do Ms. Heling's claims fall? All three fall into the second box. While they might *relate* to the underlying state court proceedings, they do not challenge an underlying judgment, but instead the CCS's efforts to collect on that judgment. *See Richardson*, 768 F.3d at 733–34.

Ms. Heling's first claim—that CCS misrepresented the "character, amount, and/or legal status" of Ms. Heling's debt—clearly challenges only CCS's collection efforts, and so is not barred by the *Rooker-Feldman* doctrine. CCS argues that Ms. Heling is "asking this court to determine the proper amount due in the garnishment action." (Docket #16 at 4). CCS bases that argument on plaintiff's allegation that CCS's "'representation that the balance on the Debt of $538.94 was false, deceptive and misleading *given that the balance outstanding on the Debt was approximately $400.00.*'" (Docket #16 at 4 (quoting Docket #1 ¶ 36) (emphasis supplied by CCS)). CCS argues that, with that allegation, Ms. Heling "attacks the court costs added to the garnishment proceeding and such amount to a challenge to the garnishment proceedings." (Docket #16 at 4). It does not appear that Ms. Heling views her claim that way (*see* Docket #14 at 7), and the Court does not view it that way either. Rather, Ms. Heling seems merely to be arguing that CCS misrepresented her debt; she is not saying that the underlying debt was any specific amount—only that CCS misrepresented it, which could constitute an

---

[3]To the extent that CCS is arguing that Ms. Heling's claims are "inextricably intertwined" with the underlying state court proceedings, the Court rejects that position in light of the Seventh Circuit's reluctance to apply that standard in *Richardson*. 768 F.3d at 734 ("We are skeptical about the wisdom of asking whether something is 'intertwined' ('inextricably' or extricably) with a state court's judgment.").

illegal false representation under 15 U.S.C. § 1692e(2). Of course that might not, in fact, be the case. In reality, CCS might have correctly represented Ms. Heling's debt to her. But that would be a question of fact (and maybe also of law). It is an appropriate inquiry for summary judgment, which CCS may request at any time and in regards to which CCS may submit evidence and legal argument to support its position. The claim is not, however, barred by the *Rooker-Feldman* doctrine, and so the Court must deny CCS's motion in that regard.

Likewise, Ms. Heling's second claim—that CCS told Ms. Heling that the judgment against her could not be vacated—challenges only CCS's collection efforts, and so is not barred by the *Rooker-Feldman* doctrine. Again, with this claim, Ms. Heling is not in any way attacking the state court judgment. Instead, she is simply asserting that CCS incorrectly told her that the judgment against her could not be vacated. (*See* Docket #14 at 7 (clarifying that she alleges that CCS "[i]nsisted that the judgment could not be vacated because it had been published, a statement which was false and deceptive.")). CCS argues that this claim "is either a rather awkward way of stating that the creditor was not willing to agree to vacate the judgment because it was 'docketed' or that the case, including the judgment was 'published' on WCCA and the record of the proceedings could not be removed whether or not the judgment was vacated." (Docket #16 at 5). But the Court does not believe it is *either* of those things. Instead, Ms. Heling is simply claiming: (1) that CCS told her that the judgment could not be vacated; and (2) that CCS's representation, in turn, is untrue. Perhaps CCS did not tell Ms. Heling that the judgment could not be vacated; perhaps, even if it did tell her that, the representation is true. But, again, those are matters for summary judgment. Because this claim does not in any way attack the

underlying state court judgment, instead attacking only CCS's method of collection, it is not barred by the *Rooker-Feldman* doctrine.[4]

Finally, Ms. Heling's third claim—that CCS did not timely provide Ms. Heling with the required written documentation of her debt—also challenges only CCS's collection efforts, and so is not barred by the *Rooker-Feldman* doctrine. Ms. Heling claims that CCS did not provide her with written documentation of her debt within 5 days of its initial communication to collect the debt, as required by 15 U.S.C. § 1962g. (Docket #1 ¶ 42). Ms. Heling appears to be claiming, fairly broadly, that, after she got in touch with CCS, she was never provided with a debt validation as required by 15 U.S.C. § 1692g(a). She does not argue that this undermines the judgment or garnishment proceedings in any way. CCS may, ultimately, argue that the garnishment notice Ms. Heling received somehow satisfied 15 U.S.C. § 1692g(a)'s requirements or that the Court, for some legal reason, should not require adherence to 15 U.S.C. § 1692g(a) when state garnishment proceedings are ongoing. But CCS has not offered evidence or legal argument to support either of those positions (or perhaps other viable defenses). Therefore, on the record before the Court, it appears that this claim—just like the others—is simply a challenge to CCS's collection efforts and does not run afoul of the *Rooker-Feldman* doctrine.

---

[4]This result is almost identical to the one Magistrate Judge Joseph reached in *Gonzales v. Kohn Law Firm, S.C.*, No. 13-CV-168-NJ, 2015 WL 5794157, at *9 (E.D. Wis. Oct. 2, 2015) ("Her allegation that Kohn violated the FDCPA and WCA through alleged misrepresentations—by telling her she had to present them with her federal and state tax returns to prove she was not Manuel's wife in order to stop the garnishment—can be analyzed without questioning whether or not the garnishment itself was legal or valid. That is, whether the garnishment was legal or illegal has no bearing on whether or not Gonzales can be successful on this claim.").

CCS argues that Magistrate Judge Joseph held to the contrary in *Gonzales*, but the Court finds that *Gonzales* is distinguishable. Quoting *Gonzales*, CCS argues that the *Rooker-Feldman* doctrine bars this claim because the claim "'transpos[es]' federal requirements 'on an already-existing state procedure.'" (Docket #16 at 7 (quoting *Gonzales*, 2015 WL 5794157, at *10)). CCS does not flesh this argument out fully, instead mostly relying on Magistrate Judge Joseph's ultimate decision in *Gonzales*. (*See* Docket #16 at 7–8). But *Gonzales'* application to this case is unclear. In that case, the plaintiff's "position [was] that she never received notice of the garnishment." *Gonzales*, 2015 WL 5794157, at *10. Magistrate Judge Joseph rejected that position, concluding that the plaintiff could "not bring a claim that the garnishment itself was improper." *Id.* In other words, it appears, that Magistrate Judge Joseph concluded that the plaintiff's 15 U.S.C. § 1962g claim for lack of notice was, in fact, a challenge to the underlying garnishment on the basis that the plaintiff never received notice thereof. *Id.* The *Gonzales* plaintiff's brief in opposition to the defendant's motion to dismiss bears that point out: the brief focused on the existence of a factual issue as to whether the defendant had served the plaintiff with a garnishment notice. *See* Case No. 13-CV-168, Docket No. 87 at 8–12. In that light, Magistrate Judge Joseph's conclusion that the *Gonzales* plaintiff was "attempting to re-write the state-court garnishment procedure," made perfect sense. 2015 WL 5794157, at *10. In effect, the *Gonzales* plaintiff was trying to argue that, because she had not received the garnishment notice, the garnishment was improper; that would certainly run afoul of the *Rooker-Feldman* doctrine, as Magistrate Judge Joseph concluded. *See id.* at *10. In this case, on the other hand, Ms. Heling alleges generally that she was not timely provided the required validation of her debt. (Docket #1 ¶ 42; Docket #14 at 7). She does not do so in the context of

asking the Court to somehow disturb the garnishment proceedings, unlike the plaintiff in *Gonzales*. (Docket #1 ¶ 42; Docket #14 at 7). And, without that concern, the Court is unable to reach the conclusion suggested by the defendant that this claim runs afoul of the *Rooker-Feldman* doctrine. Accordingly, the Court finds that *Gonzales* is distinguishable, and rejects CCS's argument to the extent it relies on that case.

CCS argues, in the alternative to its reliance on the *Rooker-Feldman* doctrine, that Ms. Heling's claims are all claim-precluded. Under the Full Faith and Credit Act, 28 U.S.C. § 1738, the Court must apply the Wisconsin law of claim preclusion, which bars re-litigation of claims brought in an earlier suit when: (1) a court with jurisdiction rendered a final judgment on the merits in the earlier suit; (2) there is identity between the parties in the current and earlier suits; and (3) there is identity between the causes of action in the two suits. *See, e.g.*, *In re Dollie's Playhouse, Inc.*, 481 F.3d 998, 1000 (7th Cir. 2007); *Froebel v. Meyer*, 217 F.3d 928, 933 (7th Cir. 2000); *Kruckenberg v. Harvey*, 2005 WI 43 ¶ 21, 279 Wis. 2d 520, 694 N.W.2d 879. The Court will assume the first and second of those requirements are satisfied.

The third requirement—identity between the causes of action—is not satisfied; in fact, the Seventh Circuit has addressed this issue and foreclosed application of claim preclusion to claims like Ms. Heling's. *See Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958 (7th Cir. 1997). In *Whitaker*, the plaintiff brought an FDCPA claim after the defendant had obtained a default judgment against her in state court and began garnishing her wages. *Id.* at 955. The defendant argued that, under Illinois law, claim preclusion barred the plaintiff's claims. *Id.* The Seventh Circuit rejected that argument:

> The Illinois courts, we believe, would also allow her claim to proceed under the transactional approach. The transactional approach asks whether both claims arise out of the same factual situation. While it is true, as Ameritech [the defendant] asserts, that Whitaker's [the plaintiff's] claims do arise out of her telephone service in the most general sense, the essence of her claim is that Ameritech has injured her in the collection process. Debt attachment and debt collection are matters separated by time and purpose. Whitaker incurred a debt to Ameritech every time she picked up the telephone to make a long distance or information provider call. Ameritech's collection procedures, however, never affected Whitaker until she failed to pay her bill. To lump debt attachment and debt collection together as the same cause of action under the res judicata [claim preclusion] analysis is to give res judicata broader sweep than we believe the Illinois courts are willing to give it.

*Id.* Wisconsin courts also apply the "transactional" approach, *Kruckenberg*, 2005 WI ¶¶ 25–27, so there is no reason to believe that *Whitaker*'s rationale would not apply. And *Whitaker*'s reasoning applies directly to Ms. Heling's claims: just as *Whitaker* distinguished between debt attachment and debt collection, so does Ms. Heling. She is challenging *only* CCS's debt collection efforts. Accordingly, *Whitaker* squarely forecloses CCS's claim-preclusion argument. *See also Adair v. Sherman*, 230 F.3d 890, 896 (7th Cir. 2000) (distinguishing *Whitaker* in case, unlike this one, where plaintiff challenged the existence and amount of underlying debt; and making clear that "this circuit…ha[s] held that an FDCPA action is not an action to establish a debt but an action contesting the method of collection of that debt.").

The Court having rejected CCS's *Rooker-Feldman* and claim-preclusion arguments, it is obliged to deny CCS's motion to dismiss.

Accordingly,

IT IS ORDERED that CCS's motion to dismiss (Docket #7) be and the same is hereby DENIED.

Dated at Milwaukee, Wisconsin, this 2nd day of February, 2016.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge