# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**LORI HELING,**

**PLAINTIFF,**

**CASE NO. 15-CV-1274**

**CREDITORS COLLECTION SERVICE, INC.,**

**DEFENDANT.**

---

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

## INTRODUCTION

Plaintiff commenced this proceeding against the defendant, Creditors Collection Service, Inc., (hereafter "CCS") claiming that the defendant's acts of collecting a debt owed by the Plaintiff violated the Fair Debt Collection Practices Act, 15 USC §1692a, *et seq.* Specifically, the Plaintiff claims that CCS misrepresented the total amount due at a point in the collection process after a judgment was entered, and after a garnishment proceeding was commenced. Plaintiff also alleges that CCS incorrectly told Plaintiff that the judgment against her could not be

1

vacated and that CCS did not timely provide Plaintiff with "required" written documentation of her debt.

Creditors Collection Service, Inc. now moves for Summary Judgment seeking a dismissal of the Plaintiff's Complaint. CCS believes they properly enforced a State Court judgment by filing, through counsel, a garnishment proceeding incurring additional costs along the way, costs that are recoverable in addition to the judgment amount. CCS did not say the judgment *could* not be vacated, but only that they *would* not vacate the judgment. CCS sent an initial notice to Ms. Heling and is not required by the FDCPA to provide written documentation to the Plaintiff, nor was such information ever requested. For these reasons the Defendant believes that this action is ripe for Summary Judgment dismissing the Plaintiff's claims.

## FACTS

The undisputed facts as submitted in the accompanying Statement of Undisputed Material facts and Affidavit of representatives of CCS are these.

On 9/17/2013, Plaintiff incurred a debt with her dentist for $197.00. *Defendant's (hereafter CCS) Statement of Undisputed Facts, ¶6.*

After attempting to collect this debt for over a year and realizing that the insurer paid the claim to the Plaintiff directly, on 10/17/2014 the dentist referred the account to CCS, a licensed collection agency for collection of the account. *Id.* at *¶2, 6, 9.* The dentist listing sheet gave the agency all relevant information about the debtor, her name, address, and the amount of the debt including her last date of service. Consistent with the procedures utilized by the Defendant, CCS sent its initial letter to the debtor at the address indicated on the listing sheet on

2

10/17/2014. A copy of that letter shows that it gave the debtor the usual 30 day period to dispute the debt and complied in all respects with the provisions of the Fair Debt Collection Practices Act, 15 U.S.C. §1692g. The letter was not returned to the Defendant as undeliverable and was presumed received. *Id., ¶ 7; Exhibit 3 attached to Affidavit of Nancy Wagner.*

During the course of the next four months, the agency sent four more letters to Ms. Heling. None of these letters were returned by the post office. No response or contact by the debtor was received. *Id., ¶ 8; Exhibit 4 attached to Affidavit of Nancy Wagner*

On 4/23/2015 a small claims Summons and Complaint was filed against Ms. Heling in the Sheboygan County Circuit Court, as Case No.15 SC 965. This suit resulted in a Judgment entered on 6/1/2015 in the amount of $390.09. *Id., ¶ 10.*

The Judgment was docketed on June 8, 2015, at a cost of $5.00, and post-judgment interest began to accrue. A letter was sent to Lori Heling on 6/17/2015 asking that she contact the agency which also was not returned by the Post Office. *Id., ¶ 11.*

About a month later, on 7/21/15, with no response from the debtor, a garnishment was filed seeking to garnish wages through her employer, Holy Family Memorial. In addition to the judgment ($390.09), docketing fee ($5), and post judgment interest ($1.05), totaling **$396.14**, costs were incurred to commence the garnishment action. In particular, a filing fee was paid to the clerk of **$92.50**, a "tender fee" sent with the garnishment Summons and Complaint to the employer in the amount of **$15.00**, and an attorney's fee **of $15**.**00** was added to the account balance. In addition, the pleading listed **$22** of anticipated costs--$20 as the reasonable charge for the attorney to prepare

3

and file the satisfaction upon full payment and an estimate of $2 for post judgment interest accruing during the garnishment. The total shown on the Garnishment Notice was **$540.64.** Wisconsin law allows for the collection of these costs incurred to commence the garnishment action and for post-judgment interest accrued on the judgment indebtedness until it is paid. A copy of the garnishment pleadings titled as "Garnishment Notice" and "Earnings Garnishment" indicates this balance as the amount the creditor was seeking in the garnishment suit. *Id., ¶ 12, 13; Exhibit 6 attached to Affidavit of Andrew Morgan.*

On August 3, 2015, Lori Heling called CCS. Nancy Wagner spoke to her on the phone and she has a recollection of what they said during the call. She also kept some contemporaneous notes of the call in the account notes. *Id., ¶ 14.* Ms. Heling was aware that her dentist was garnishing her wages but she claimed to know nothing about the outstanding balance owed. She gave a different address than the address on the listing, at W3453 Playbird Rd., Sheboygan, Wisconsin, 53085. Nancy Wagner told her that the summons had been returned to the court and that service was accomplished by "publication." *Id., ¶ 14, 15.*

Ms. Heling asked if the judgment could be vacated, and Nancy Wagner told her that CCS *would not* vacate the judgment. Nancy Wagner's contemporaneous entry to the account notes was "SHE WANTED IT VACATED—TOLD WOULD NOT." . *Id., ¶ 2 and attached Exhibit 1 to Affidavit of Nancy Wagner; ¶ 16.* Nancy Wagner told Ms. Heling

4

that the balance on the account including a satisfaction fee was **$538.64,** which included only the actual costs incurred and the satisfaction fee. *Id., ¶ 16, 17, 19, 23.*

Once a judgment is paid through garnishment CCS ensures that it is satisfied. The creditor's attorney will prepare and file a satisfaction of the judgment and file it with the Clerk and pay the fee of $5. CCS adds that cost, $5 for the clerk's fee and $15 as the reasonable attorney's costs to prepare and file the satisfaction in anticipation of incurring that cost which costs are permitted by statute. *Id., ¶ 17.*

Ms. Heling emailed the creditor's attorney, Andrew Morgan, and was told by him that the total amount due included a $20 fee to prepare and file the satisfaction, which would be filed if the judgment was paid through the garnishment, but that if she wanted to file the satisfaction herself that the payoff would then be $20 less. *CCS Statement of Undisputed Facts, ¶ 18, Exhibit 7 attached to Affidavit of Andrew Morgan.*

Ms. Heling did not make any payments or offer to pay at that time. *Id., ¶ 17.*

On 8/28/2015, CCS received a garnishment check from her employer in the amount of $395.07. *Id., ¶ 20.* Shortly before 9/17/2015, the employer called CCS and requested the final amount due. When asked if the satisfaction cost of $20 should be included in the total, the employer representative indicated that it should be. *Id., ¶ 21.* CCS received a check on 9/17/2015 for $144.47, which amounted to the final payoff of the account, including the satisfaction cost. Between the time that the garnishment was filed and the time the debt was paid off in full, an additional amount of interest accrued of

5

$.90. The total amount paid was **$539.54** representing all costs and interest incurred. *Id.,*
*¶ 21, 24.*

Upon the final payment, a satisfaction of the judgment was promptly prepared and filed
and the cost for filing it was paid the next day, on September 18, 2015. *Id., ¶ 22.*

This case was a routine collection matter. Ms. Heling caused the creditor and this agency
to exercise every legal avenue available to it to collect this debt and to incur the wide range of
costs contemplated by the statutes. This isn't rare by any means, but it is an example of the costs
that are incurred when a lawsuit and a garnishment suit are commenced to collect the amount of
the debt. *Id., ¶ 25.*

When Ms. Heling told CCS that she no longer lived at that address, CCS did follow up
with the creditor's representative. The creditor indicated that Ms. Heling had never changed her
address with them and no bills were returned by the post office. CCS was told by the creditor's
representative though that at about the same time that she called CCS in response to the
garnishment, she called the dentist office and told them that she changed her address with the post
office only, and that is "the best she can do." *Id., ¶ 26.* This fact causes CCS to believe that
Ms. Heling received the original CCS notice at the outset of the collection process. *Id., ¶*
*26.*

Defendants now respectfully move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled to judgment as a matter

6

of law." Fed. R. Civ. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. "Material" facts are "outcome determinative under the governing law." *Whetstine v. Gates Rubber Co.*, 895 F.2d 388, 392 (7th Cir. 1990).

To overcome summary judgment, the non-moving party must produce enough specific material facts in support of its claim to sustain its burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 689, 692 (7th Cir. 2000). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252, *See* also *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (explaining that a non-moving party "must come forward with specific facts showing that there is a genuine issue for trial") (internal quotations and emphasis omitted).

7

# ARGUMENT

## I.      Background

CCS originally moved to dismiss this action on grounds that the claims were rooted in challenges to the underlying Judgment and/or garnishment proceedings and thus violated the *Rooker-Feldman* doctrine.  Though the Plaintiff plead a multitude of facts relating to the way the action was commenced, and concluded, i.e. service by publication and judgment by default, the Plaintiff re-categorized those facts as "background," and no claims currently arise from them in this action. As a result the Plaintiff's claims have been found not to involve challenges to the underlying court actions, in either entering the judgment or pursuing the garnishment as such. Plaintiff's claims have been reduced to the following three:

(1) that CCS misrepresented the "character, amount, and/or legal status" of the judgment against Ms. Heling that CCS was collecting;

(2) that CCS incorrectly told Ms. Heling that the judgment against her could not be vacated; and

(3) that CCS did not timely provide Ms. Heling with required written documentation regarding the debt.

(Docket #14 at 7 (citing Docket #1 ¶¶ 33–37, 40–43); Docket #17 at 1).

It is to these three claims that the Defendant now turns.

## II. All of the costs added to the balance of the debt are "permitted by law," and are properly due and thus no violation of the FDCPA occurred by charging them, or representing that they were due.

8

During the course of the collection process, a debt originally due in the amount of $197.00, became a debt in the amount of $539.54. This happened as a result of significant costs expended by the Creditor to ultimately obtain collection of the account.

Costs were first incurred as a result of filing a small claims lawsuit in the Sheboygan County Circuit Court. By the time judgment was entered, the debt with costs became $390.09. This escalation of the debt does not seem to be challenged by the Plaintiff. But Plaintiff alleges that the increase of the debt *thereafter* amounts to a misrepresentation. A review of those additional costs will show that they too were permitted additions to the debt.

The FDCPA specifically allows for the collection of costs and other charges as "permitted by law." *See* 15 U.S.C. § 1692f. The statute provides, in relevant part:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

    (1)    The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or **permitted by law**. *Id.* (emphasis added).

Similarly, 15 U.S.C. § 1692e(2)(A) provides that a debt collector may not use,
(2)    The false representation of ---

    (A)    The character, amount, or legal status of the any debt, . . .

to collect a debt.

Accordingly, when faced with an alleged violation of the FDCPA with regard to the practice of collecting interest or costs, the question for the court becomes whether

9

under Section 1692f(1) or 1692e(2)(A) the interest and costs sought to be collected are "permitted by law." *Turner v. J.V.D.B. & Assocs., Inc.,* 330 F.3d 991, 996 (7th Cir.2003) (stating: "Whether the collection of a debt violates § 1692f(1) depends solely on two factors: (1) whether the debt agreement explicitly authorizes the charge; or (2) whether the charge is permitted by law.

"As a matter of plain reading, the word 'expressly' in Section 1692f(1) modifies the phrase 'authorized by the agreement' and not the phrase 'permitted by law.'" *Newman v. Checkrite California, Inc.,* 912 F. Supp. 1354, 1368 (E.D. Cal. 1995). Therefore, a general statutory authorization suffices.[1] *Id.;* see also *Johnson v. Riddle,* 305 F.3d 1107, 1118 (10th Cir. 2002) (noting the absence of any dispute with respect to the district court's conclusion that, in interpreting the phrase permitted by law, "'a general statutory authorization' satisfies the FDCPA; that is, rather than pointing to a state statute that expressly permits a particular imposition of fee, one need only identify some state statute which 'authorizes or allows, in however general a fashion, the fees or charges in question.'"); *c.f. Freyermuth,* 248 F.3d at 770; *Duffy v. Landberg,* 215 F.3d 871, 873-75 (8th Cir. 2000); *Tuttle v. Equifax Check,* 190 F.3d 9, 13-15 (2d Cir. 1999); *Gradisher v. Check Enforcement Unit, Inc.,* 210 F.Supp.2d 907 (W.D. Mich. 2002).

If the interest and costs claimed due by CCS and in fact paid through garnishment of the Plaintiff are "permitted by law," then representing that such amounts

---

[1] Examination of the FDCPA's history fully supports the interpretation drawn from the statute's grammar. An earlier version of the statute did use the word "expressly" to require specific statutory authorization for any amounts sought to be recovered in excess of the debt. *See* S. 918, 95th Cong., 1st

were due and collecting such amounts would not violate the Section 1692(f) or any other provision of the FDCPA. And with respect to claimed violation under Section 1692e(2)(A), the question is simply, is the amount of the debt false. If the costs that were added to the debt in this case were permitted by law, then the amount of the debt, including those costs, was not falsely represented and does not violate the Act.

Plaintiff alleges in her Complaint that the "Garnishment Notice" filed with the court sought the recovery of $396.14 on the judgment, $22 as interest, and $122.50 as the *estimated* costs of this earnings garnishment for a total of $540.64 (emphasis added). *Document #1, ¶ 26.* However it is understood that the Plaintiff does not take issue with the Garnishment Notice (for fear of wading into the Rooker-Feldman debate) but instead claims that when the Plaintiff was told on August 3, 2015 that the balance was $538.64[2], that *such representation* was excessive and thus, violated the Act. *Document #1, ¶ 33, 34, 35, 036, 37.*

The Garnishment pleadings were filed with the court to commence the garnishment action on 7/21/15. As of that date the costs added after the entry of judgment were as follows: a $5 docketing fee paid 6/8/2015, post judgment interest of $1.05, a garnishment filing fee of $92.50 paid on 7/21/2015 to commence the action, $15 tender fee paid by check to the employer at the time the papers were mail/served

---

Sess., March 4, 1987 (prohibiting collection of any additional amount "unless such amount is expressly authorized by law"). The current statute abandoned this language.

[2]    Plaintiff uses the figure $538.**9**4 in its allegations, but the number appearing throughout the documentation of CCS is $538.**6**4. The $0.30 difference does not appear to be the basis for the Plaintiff's claims, claiming instead that the "correct" figure was "approximately $400." Docket #1, ¶35. Since the correct figure appearing throughout

immediately thereafter, $15 as a statutory attorneys fee (the statute allows for $50), and an additional estimated post-judgment interest and satisfaction cost of $2, and $20, respectively. If these charges were incurred as of the "date of Plaintiff's communication with Defendant" on August 3, 2015 or are "permitted by law," then including them in the pleading for garnishment and representing them to Ms. Heling cannot be a violation of the Act.

Wisconsin statutes governing the enforcement of judgments allow for the costs of the garnishment and other costs to be charged to Ms. Heling in this case. The costs and statutory authority breaks down as follows:

a. **$5** docketing fee, §814.61(5)(b) Wis. Stats. ("…entering judgments"), §806.10, Wis.Stats. (Judgment and lien docket) §814.04, Wis. Stats. ("**Items of Costs**...(2) Disbursements. All the necessary disbursements and fees allowed by law; …").

b. Post judgment interest, §815.05(8), Wis. Stats. Post-judgment interest of **$1.05** was added to the judgment of $390.09 in the "unpaid balance on judgment" box of the garnishment pleading, along with the docketing fee of $5 (above) bringing the total in that box to $396.14. An additional $2.00 was added to the "interest" box, as anticipated interest to accrue during the pendency of the 13 week recurring garnishment along with the $20 satisfaction cost (see sub. f, below) for a total of $22.

c. **$92.50** Garnishment filing Fees, §814.04, Wis. Stats. ("**Items of Costs**...(2) Disbursements. All the necessary disbursements and fees allowed by law; …"); §812.32, Wis. Stats. ("Earnings garnishment is an action to collect an unsatisfied civil judgment for money damages plus statutory interest and costs…"). See also §814.62(1), Wis. Stats., $20; §814.85(1)(c), $51; §814.85(1), $21.50. The sum of these three mandated fees is **$92.50** for filing.

the documents and notes of CCS is the lower amount, CCS will adopt that figure as the figure that the Plaintiff is claiming was not the correct figure.

12

d.  **$15** tender fee, sent to the employer to process the garnishment, and required by §812.35(4)(a), Wis. Stats. *See also*, §812.33, Wis. Stats. ("This fee shall be included as a cost in the creditor's claim in the earnings garnishment.").

e.  **$15** as a statutory attorney's fee, §814.04(1), Wis. Stats. (("**Items of Costs**... (1) When the amount recovered or the amount involved…is less than $1,000, attorney fees shall be $100"). The attorney sought less than that. The sum of c, d, and e is $122.50, the amount inserted in the pleading in the "estimated costs of this earnings garnishment."

f.  **$20** for the satisfaction of the judgment made up as follows: $15 as the reasonable charge to prepare and file the satisfaction and $5 to the clerk of courts to file the satisfaction. §814.61(5)(b) Wis. Stats. ("…satisfactions of judgments"). See also, §806.20(2) Wis. Stats. ("If any owner of any judgment, after full payment thereof, fails for 7 days after request *and tender of reasonable charges therefor, to satisfy the judgment*, the owner shall be liable to the party paying the same, the party's heirs or representatives in the sum of $50 damages and also for the actual damages occasioned by such failure.") (emphasis added). In order to be entitled to a satisfaction a debtor must tender the "reasonable charges therefor."

All of these costs are "permitted by law." The total of the costs above are $**540.64**—the amount shown on the garnishment pleading, known as the "Earnings Garnishment Notice" or "Earnings Garnishment." Because the $2 interest figure was an estimate and because the employer called CCS to inquire regarding the exact figure for the payoff, only $0.90 of that $2 was charged at the time of payoff. The total due when fully paid was **$539.54** ($1.10 less than stated in the garnishment Notice). It was paid in two payments through the garnishment of the Ms. Heling's wages, $395.07, on 8/28/2015, and the remaining $144.47 on 9/17/2015. Despite the allegations in the Complaint that the Plaintiff called the Defendant on August 3, 2015 and that "she was then and there prepared to pay said bill," *Docket #1, ¶32*, nothing was paid at that time.

13

Two payments received over the succeeding one and one-half months paid the bill *through the garnishment*, further illustrating the need for that procedure to collect the debt.

The Plaintiff's basic claim is that during that phone call on August 3, 2015, CCS informed Plaintiff that the balance to satisfy the debt was $538.94, *Docket #1, ¶33*, and claims further that as of that date the balance outstanding on the debt "was less than $538.94." *Docket #1, ¶34,* noting further in the next paragraphs that, "As of the date of Plaintiff's communication with the Defendant, the cost of the Earnings Garnishment Notice had not been realized, resulting in a balance outstanding on the Debt in the amount of approximately $400.00." *Docket #1, ¶35, 36.* Neither of these assertions are true.

On August 3, 2015 the balance expressed to Ms. Heling was 538.64, which included the judgment of $390.09, $5 docketing, $92.50 filing, $15 tender, $15 attorneys fee, $1.05 of interest, and the optional satisfaction cost of $20 for the cost of preparing and filing the satisfaction. *Defendant's Statement of Undisputed Facts*, ¶ 17, 18, 19. Clearly, the costs were incurred as of the filing of the garnishment action on 7/21/15, *Defendant's Statement of Undisputed Facts*, ¶ 19, 23, and were more than the "approximately $400" claimed in Plaintiff's Complaint. *Docket #1, ¶35, 36.*

What is even more telling, is that when Ms.Heling spoke to CCS she was told the exact amount that was due at that time, including the satisfaction fee. When Ms. Heling contacted the attorney for the creditor, the attorney informed her that the balance stated

in the Garnishment Complaint included an estimated $20 satisfaction cost that need not be paid if she did not want the attorney to file the satisfaction (As stated by Attorney Morgan, "Estimated only because it includes $20 for a satisfaction of judgment if garnishment pays off the total due... if you want to do that yourself then you would deduct the $20." *Defendant's Statement of Undisputed Facts*, ¶ 18; *Affidavit of Attorney Andrew Morgan*, ¶ 5, 6 *and attached Exhibit 7*). In the end, Ms. Heling's employer (and it seems Ms. Heling) chose to pay these amounts from her wages under the garnishment, and the employer too was told that if Ms. Heling didn't want to pay for the satisfaction, a $20 reduction from the total would apply. But the employer (or Ms. Heling) chose to have the attorney perform that task, and it was performed promptly the next day, 9/18/2015. *Defendant's Statement of Material Facts*, ¶ 21, 22.

Contrary to the allegations of the Plaintiff, these costs had been incurred as of the phone call and communications on August 3, 2015. On that day she was offered an amount that reflected the current amount due at that time, and was offered the opportunity to reduce the debt by the $20 cost for satisfying the judgment. No representation was made otherwise to her by the attorney or by the agency when she called them. For these reasons, Plaintiff's first basis for claiming a violation of the Act must be dismissed.

But one more point needs to be made. If the Plaintiff is going to base her claim not on what was said to her by CCS (because she was given the correct amounts then due) but on the garnishment *pleading* that included $2 of interest accruing during the

garnishment, of which she ultimately paid $0.90[3] and the satisfaction costs yet to be incurred, the Defendant believes that such a claim is also to be denied. Such a claim attacks the Garnishment Complaint--the allegations of a pleading--which violates the Rooker-Feldman line of argument. But even more, allegations contained in pleadings, especially when those allegations include amounts that may yet be incurred in the case, are not actionable as "false" claims under the FDCPA.

Allegations contained in pleadings and submitted to a court of competent jurisdiction are not debt-collection activities within the meaning of the Act. See, e.g. *Argenteri v. Fisher Landscapes*, Inc., 15 F. Supp.2d 55, 61 (D. Mass. 1998)("A prayer for relief in a complaint, even where it specifies the quantity of attorney's fees, is just that: a request to a third party-the court- for consideration, not a demand to the debtor himself."); *Gaisser v. Portfolio Recovery Associates, LLC,* 571 F. Supp.2d 1273, 1279 (S.D.Fla. 2008)(finding that a pleading with a request for attorney fees is not a debt-collection activity within the meaning of the Act because "the state court had discretion to award fees based on its own evaluation of the facts").

Another reason that such requests don't violate the Act is because they are not the kind of harm that should be policed by the FDCPA. In *Curtis Cook v. Bishop, White, Marxhall & Weibel, P.S., C10-1924-JCC (D.C.W.D.Washington, 1/25/2011)* **(attached),** a similar fact situation was presented. There, Bishop White had represented a client in an

---

[3] In every communication with her or her employer, the exact amount of post-judgment interest was provided, though it differed and was *less* than the $2 estimate included in the Garnishment Notice. At no time was an un-incurred amount of post-judgment interest included in any statement of the total amount due. The ultimate payment included only $0.90 of that $2.00 estimate. *Defendant's Statement of Undisputed Facts*, ¶ 17, 19, 23, 24.

action against Mr. Cook in the Spokane County Superior Court. After obtaining judgment, Bishop White submitted an affidavit of costs, which included a $66 fee for recording the judgment and a $7 fee for securing a certified copy of the judgment, neither of which had been incurred to date. Cook objected to the **un**-incurred costs and the court denied them. But thereafter Bishop White obtained a certified copy of the judgment and recorded the judgment with the Spokane County Clerk. In so doing, Bishop White incurred a fee of $7 and a fee of $66 respectively, which were collectable thereafter.

Cook then sued the law firm in the District Court for the Western District of Washington, claiming a violation of the FDCPA by seeking prospective costs in the affidavit of costs—even though the costs were ultimately incurred. The Court dismissed the action on grounds that even if this rises to the level of "abusive or fraudulent pleading practices," such matters should be addressed to the state courts who have their own system of protections to police such practices, and that such practices are not be policed with a statute designed to protect consumers from abusive debt-collection practices. Senior U.S. District Judge, John Coughenour wrote that:

> "Because Plaintiff alleges only that Defendant made improper claims for fees in a legal pleading submitted to the Spokane County Superior Court, and because he nowhere alleges that Defendant subjected him to "threats of violence and harassing telephone calls" or similar abuses, id. at 62, his claim under the Fair Debt Collection Practices Act fails." *Cook v. Bishop, White*, C10-1924-JCC (D.C. W.D.Washington, 1/25/2011) page 4.

In Ms. Heling's case, all the costs added to the balance were either incurred as of the date of the phone call with CCS, or would be incurred when the debt was fully paid. Ms. Heling claims that the amount of the debt was misrepresented to her, largely because

17

she believes that *none* of the costs of the garnishment had been incurred at the time she called, nearly two weeks *after* the garnishment was filed, as shown by her allegations that the amount of the debt "was approximately $400." *Docket #1, ¶35, 36.* She concedes that judgment was entered for the amount of $390.09. *Docket #1, ¶ 24.* And her allegations admit that some costs were accruing. But based upon the affidavits which support this motion from Nancy Wagner, Vicky Barclay and Attorney Andrew Morgan, we know without a doubt that the costs were paid for docketing, filing, serving and tendering the papers to Ms. Heling's employer. All of the costs are the costs incurred in the action—the garnishment action. And all of the costs are properly chargeable to her.

Finally, the claim that this amount or that amount was being charged to her, as estimated in the garnishment Complaint, are not material to her claims under the FDCPA. In short, "if a statement does not mislead the unsophisticated consumer, it does not violate the Act---even if it is false in some technical sense." *Wahl v. Midland Credit Management, Inc.*, 556 F.3d 643 (7th Cir. 2009). That an additional $1.10 of interest was included in the garnishment complaint for example, an amount that was never claimed as due when she called, is not material. Similarly, the $20 cost for preparing and filing the satisfaction was a cost that she was told she didn't have to pay. No misrepresentations there--and including those costs in the garnishment complaint was not material either. She pay or offer to pay any amount on the date she called CCS. Statements that don't mislead the consumer are not material. And even if false in some technical sense, such a

Case 2:15-cv-01274-JPS   Filed 06/14/16   Page 18 of 27   Document 21

statement does not violate the Act. *See Hahn v. Triumph Partnerships LLC*, 557 F.3d 755 (7th Cir. 2009).

For all of these reasons, there was never a time that an amount was expressed or communicated to Ms. Heling that misrepresented the amounts of costs that had been incurred or as in the case of the satisfaction amount, would be incurred if she chose to have the judgment satisfied. The Plaintiff's claims in this regard should be dismissed.

### III. Plaintiff's Claim that she was told that the judgment *could* not be vacated forms no basis to claim a violation of the FDCPA.

The Plaintiff alleges that during her discussion with CCS, she informed them that she was prepared to pay the judgment amount but requested that Defendant have the judgment vacated. *Docket #1, ¶ 38.* Plaintiff alleges that CCS informed Ms. Heling that "it *could not* have the judgment vacated." *Docket #1, ¶ 39.* Plaintiff also alleges the when requested to vacate the judgment, CCS "refused to do so and informed Plaintiff that the judgment could not be vacated 'because it had been published.'" *Docket #1, ¶ 40.*

Nancy Wagner has stated in her affidavit that she recalls the conversation and confirms that she told Ms. Heling that they (or the creditor) *would* not vacate the judgment and she contemporaneously entered those words in the account notes as "SHE WANTED IT VACATED—TOLD WOULD NOT." *Defendant's Statement of Undisputed Facts*, ¶ 16. And the only mention of "publication" was in reference to the how service was obtained—by *publication* of the Summons and Complaint. *Defendant's Statement of Undisputed Facts*, ¶ 15. This was in relation to Ms. Heling claiming that she had no notice of the court case and even no notice of the bill. Ms. Heling has simply

19

misinterpreted the conversation but even so her allegations do not support a claim under the FDCPA.

In order to determine if collection letters violate the FDCPA, the Court must examine the letters from the standpoint of the "unsophisticated consumer or debtor." *Durkin v. Equifax Check Services, Inc*., 406 F.3d 410, 414-415 (7th Cir. 2005) (citing *Fields v. Wilber Law Firm, P.C.,* 383 F.3d 562, 564-66 (7th Cir. 2004)). "While the unsophisticated debtor is considered "uninformed, naive, or trusting," he is nonetheless deemed to possess "rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *Fields,* 383 F.3d at 564-66 (internal quotations omitted). The unsophisticated-debtor standard is an objective one and is not the same as the already rejected least-sophisticated-debtor standard; accordingly, the Court "must disregard unrealistic, peculiar, bizarre, and idiosyncratic interpretations of collection letters." *Durkin*, 406 F.3d at 414; see also *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000); *Gammon v. GC Servs., L.P.*, 27 F.3d 1254, 1257 (7th Cir. 1994). While many cases decided under the FDCPA are cases involving the language used in letters, a similar standard is employed when evaluating a conversation.

Plaintiff could be claiming that the language used was confusing. But a mere claim of confusion is generally not enough: a plaintiff must show that the challenged "language [of the letters] unacceptably increases the level of confusion." *Johnson v. Revenue Mgmt. Corp.,* 169 F.3d 1057, 1060 (7th Cir. 1999) (emphasis omitted). Under this standard, a

20

plaintiff's proclamations of being confused are not sufficient: a collection letter cannot be confusing as a matter of law or fact "unless a significant fraction of the population would be similarly misled." *Pettit*, 211 F.3d at 1060; see also *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574-75 (7th Cir. 2004). As the Seventh Circuit has previously stated, "the FDCPA protects the unsophisticated debtor, but not the irrational one." *White v. Goodman,* 200 F.3d 1016, 1020 (7th Cir. 2000). In some situations, when an FDCPA violation is so "clearly" evident on the face of a collection letter, a court may award summary judgment to the FDCPA plaintiff." *Durkin*, 406 F.3d at 415; see also *Avila v. Rubin*, 84 F.3d 222, 226-27 (7th Cir. 1996); *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 518-19 (7th Cir. 1997). Speculation that a collection letter confuses the unsophisticated debtor is not enough for an FDCPA plaintiff to survive an opposing debt collector's summary judgment motion. Id; see also *Pettit*, 211 F.3d at 1061; *Jenkins v. Heintz*, 124 F.3d 824, 831 (7th Cir. 1997). Therefore, if the letter itself does not plainly reveal it would be confusing to a significant portion of the population, the plaintiff must present evidence beyond the letter and beyond her own self-serving assertions in order to create a genuine issue of material fact for trial to avoid summary judgment. See *Taylor*, 365 F.3d at 574-75; *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 948-49 (7th Cir. 2004); *Walker v. Nat'l Recovery, Inc.,* 200 F.3d 500, 503-04 (7th Cir. 1999). Using "a carefully designed and conducted consumer survey" can satisfy the need for additional evidence. *Durkin*, 406 F.3d at 415; see also *Taylor*, 365 F.3d at 575; *Chuway*, 362 F.3d at 948; *Pettit*, 211 F.3d at 1062; *Walker*, 200 F.3d at 501, 503.

21

If a plaintiff offers no evidence except the text of the communication, and then if there was nothing deceptive-seeming about the communication, the court must dismiss the case as a matter of law. *Evory,* 505 F.3d at 776-77 (quoting *Taylor v. Cavalry Investment, L.L.C.,* 365 F.3d 572, 574-75 (7th Cir.2004) ("[I]f it is apparent from a reading of the letter that not even `a significant fraction of the population' would be misled by it ..., the court should reject it without requiring evidence beyond the letter itself."); *McMillan v. Collection Professionals, Inc.,* 455 F.3d 754, 760 (7th Cir.2006) ("[U]ndoubtedly, there will be occasions when a district court will be required to hold that no reasonable person, however unsophisticated, could construe the wording of the communication in a manner that will violate the statutory provision.")).

Finally, in order for a representation to be a violation of the FDCPA, the representation must also be material. Once again, "if a statement does not mislead the unsophisticated consumer, it does not violate the Act---even if it is false in some technical sense." *Wahl v. Midland Credit Management, Inc*., 556 F.3d 643 (7th Cir. 2009). *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755 (7th Cir. 2009).

Applying these principles to a communication that is oral, Ms. Heling is required to be "rational," and to refrain from being "unrealistic, peculiar, bizarre, and idiosyncratic in her interpretation of the conversation. *Durkin*, 406 F.3d at 414. It is clear that she spoke to CCS about the fact that she was previously unaware of this debt and the legal action that followed. She asserts as much in her Complaint. *Docket #1, ¶ 29, 31.* So it makes sense that the parties spoke of service, of the address used for the suit, *Docket #1,*

*¶ 30,* and that service was accomplished by "publication" as we know it was discussed from the Affidavit of Nancy Wagner, *¶ 14.*

We also don't know whether one or both of the parties could have the judgment vacated. What she alleges is that "*it* could not have the judgment vacated." *Docket #1, ¶ 39.* But we know from Nancy Wagner that she said CCS *would* not vacate the judgment. CCS had no obligation to do so, and the FDCPA does not require such action. But it was a truthful statement. CCS *would* not vacate the judgment. It is not deceptive, or unconscionable to say "no." Indeed, it is rather forward and truthful. What is interesting is that Ms. Heling had the where-with-all to request that the judgment be vacated. Clearly she could file her own motion to seek to vacate the judgment. Whether the court would grant such a motion is anyone's guess. But that is an entirely different set of questions. Said another way, the statement CCS made, that they would not vacate the judgment is both truthful and correct.

The plaintiff then adds to this that it was all "because it was published." *Docket #1, ¶ 40.* If the Plaintiff interprets the conversation about service of the Summons by "publication" as a statement that not agreeing to vacate the judgment was linked to something about "publication," that level of confusion does not rise to the level of a material statement to violate the FDCPA. It did not mislead Ms. Heling since she did nothing in response to her understanding of such a statement. It is simply a misinterpretation of the conversation. It is a bizarre interpretation at that—if she knew about vacating a judgment, she had to know that she had the ability to move the court to

23

vacate, something to this day with the benefit of counsel she has not done. But telling her that the agency or the creditor would not vacate the judgment is not a false statement.

Plaintiff's claims of what was said in this single conversation was either not material to anything that was done by the debtor thereafter—i.e. not misleading in any demonstrated way—or the claimed statements regarding the fact that the Summons and Complaint was "published" and that CCS would not vacate the judgment, were true. Either way, they don't state a claim for violation under the FDCPA.

## IV.    CCS properly sent Ms. Heling an initial letter that included all information required by the Act, on October 17, 2014. Nothing further was ever required.

The facts are undisputed that CCS sent an initial letter on the date that the account was listed with the agency, October 17, 2014. *Defendant's Statement of Undisputed Facts*, ¶ 7. A copy of that letter is attached to the affidavit of Nancy Wagner, as Exhibit 3. It is also undisputed that the address for that letter was the address given to the agency by the creditor, an address that had not been changed with the creditor. *Defendant's Statement of Undisputed Facts*, ¶ 6, 7, 26. The letter includes the "30 day validation notice" required by the terms of 15 U.S.C. §1692g(a), that in relevant part provides:

> (a) "Notice of debt; contents.
> Within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, *unless the following information is contained in the initial communication* or the consumer has paid the debt, *send* the consumer a written notice containing--...." (italics added).

The statute requires that the notice be *sent*. Moreover, once a notice is sent, and assuming that it is not returned to the sender by the post office as "refused" or as

24

"undeliverable" it is presumed to be received. It is well settled that the mailing of a letter creates a presumption that the letter was delivered. *Solberg v. Sec. of Dept. of Health & Human Services*, 583 F. Supp. 1095, 1097 (E.D. Wis. 1984), *citing*, *Hagner v. United States,* 285 U.S. 427, 430, 52 S.Ct. 417, 418, 76 L.Ed.861 (1932); *McPartlin v. Commissioner,* 653 F.2d 1185, 1191 (7th Cir.1981).

Plaintiff claims that "Defendant has not provided to Plaintiff, within five (5) days of its initial communication to collect the Debt, with (sic) written confirmation of the amount of the Debt, the name of the creditor to whom the Debt is owed or a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the Debt, or any portion thereof, the Debt will be assumed to be valid by the debt collector." *Docket #1, ¶42.* But the notice was sent in the initial communication thereby suspending the obligation to provide the notice within five days after that initial communication.

In addition, Ms. Heling clearly knew who the debt was owed to and how much the debt was. With court proceedings already filed and concluded, giving her an additional validation notice was not required by the Act and makes no sense at all. Plaintiff was merely inquiring as to the amount owed on the judgment with costs in the context of a pending garnishment and was not a communication initiated by CCS. It was therefore not a debt collection communication by CCS. *Gorham-Dimaggio v. Countrywide Home Loans, Inc.*, 05-CV-0583, 2005 WL 2098068@*2 (NDNY, 8/30/05)(**attached**)(not acting as debt collector when consumer initiated the communication as to the amount on a

25

mortgage. Communication was not in connection to collection of a debt; *Boyd v. J.E. Robert Co.,* 05 CV-2455, 2010 WL 5772892 @ 13 (EDNY 3/31/10) (FDCPA did not apply where defendants were simply responding to inquiries made by plaintiff concerning the amount then due and owing on plaintiff's account). And if Ms. Heling claims to have disputed the debt during her phone call, such a dispute was not in writing, and so did not require the normal verification of the debt as when a written dispute is sent to the debt collector during the 30 day validation period. See *Jang v. A. M. Miller & Assoc.*, 122 F.3d 480 (7th Cir. 1997); *Graziano v. Harrison*, 950 F.2d 107 (3d Cir. 1991) (consumer must send a written statement to contest the validity of the debt under §1692g(b)(3)).

The FDCPA does not require that a validation notice be sent after a lawsuit has concluded and after a garnishment action has been commenced. At that point, collection of the debt will occur by garnishing the debtor's wages, or not. No further communication to collect the debt were necessary. But pending litigation has always been a particularly awkward context for application of the FDCPA, and this is another such example.

In *Jenkins v. Heintz,* 514 U.S. 291, 294-95, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995) the Supreme Court determined that the Act applied to an attorney in the course of litigating a debt collection lawsuit. The Court recognized that the Act when first enacted had an exemption for attorneys seeking to collect debt, and that Congress changed none of the wording of the Act when it repealed the attorney exemption from the definition of "debt collector." The Appellant, an attorney who was collecting a debt, argued that

26

anomalous results would be caused by the application of the Act to litigation activities. The court responding to one example of an anomalous result offered by the Appellant in that case, again acknowledged that, "it would be odd if the Act empowered a debt-owing consumer to stop the "communications" inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt." *Id.,* at 296. The Court went on to hold that at least in that particular case a "plausible" reading of the Act's provisions would avoid the anomaly as argued by the Appellant.

After having sent the initial letter with the included notices required by the FDCPA when the account was first listed, there is no requirement for CCS to send such a notice at any later time in this case. That requirement was performed and no further notice is required in the context of the garnishment.

## CONCLUSION

Based upon the arguments above, Defendant submits that based upon the undisputed material facts, Defendant is entitled to Judgment dismissing the Complaint of the Plaintiff with prejudice.

Dated this 14th day of June, 2015

Respectfully submitted,

*s/ David McDorman*
David McDorman, 01008732
Attorney for Defendant
2923 Marketplace Dr.
Madison, Wisconsin  53719
Telephone: (608) 271-2202
Facsimile: (608) 271-4009
Email: david@mcdormanlaw.com

27