# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LORI HELING,

                          Plaintiff,

v.

CREDITORS COLLECTION SERVICE, INC.,

                          Defendant.

Case No. 15-CV-1274-JPS

**ORDER**

### 1. INTRODUCTION

On October 24 and 25, 2016, a jury trial was held in this matter. (Docket #60). On October 25, 2016, the jury returned a verdict in favor of the plaintiff, Lori Heling ("Heling"). (Docket #58). At the close of Heling's evidence, and at the close of all the evidence, the defendant Creditor's Collection Service, Inc. ("CCS") preserved motions for directed verdict. The Court deferred ruling on those motions until after the jury returned a verdict. (Docket #60). After receiving the verdict, the Court informed the parties that the motions were now active and set a briefing schedule. *Id.* On November 4, 2016, CCS filed motions for judgment pursuant to Federal Rule of Civil Procedure ("FRCP") 50(a) and (b) and for a new trial under FRCP 59(a)(1). (Docket #59). Heling submitted her response on November 14, 2016. (Docket #61). CCS offered a reply on November 18, 2016. (Docket #62). The motions are fully briefed, and for the reasons explained below, they will be denied.

### 2. STANDARD OF REVIEW

FRCP 50(a) allows a party to move for judgment on a particular claim when 1) "a party has been fully heard on [the claim] during a jury trial," and 2) "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party on that [claim.]" Fed. R.

Civ. P. 50(a)(1). FRCP 50(b) is simply a method to renew a FRCP 50(a) motion. *Id.* 50(b). The Seventh Circuit instructs that

> [i]n deciding a Rule 50 motion, the court construes the evidence strictly in favor of the party who prevailed before the jury and examines the evidence only to determine whether the jury's verdict could reasonably be based on that evidence. The court does not make credibility determinations or weigh the evidence. Although the court reviews the entire record, the court must disregard all evidence favorable to the moving party that the jury [was] not required to believe.

*Passananti v. Cook Cnty.*, 689 F.3d 655, 659 (7th Cir. 2012) (citations and quotations omitted).[1]

FRCP 59 permits a party to seek a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). In clearer terms, this means that "[a] new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014). For alleged instructional errors, "[a] jury's answers to flawed special verdict questions should stand if the answers can be reconciled with the evidence and with one another in any reasonable way, *Medcom Holding* [*Co. v. Baxter Travenol Labs., Inc.*], 106 F.3d [1388,1401-02 (7th Cir. 1997)], but that standard allows for judgment and discretion." *Vojdani v. Pharmsan Labs, Inc.*, 741 F.3d 777, 781-82 (7th Cir. 2013).

---

[1]*Passananti* also permits the Court's handling of the instant motions. Heling did not object to the presentation of the motions in this fashion—summarily preserving them during trial for later briefing—and her instant briefing cites no prejudice resulting from this approach. *See Passananti*, 689 F.3d at 660-61.

3. **ANALYSIS**

Neither party's briefing cited a transcript of the trial, nor did they provide one to the Court. Thus, the Court is left to decide the motion based on its own recollection of the evidence and that of the parties as presented in their briefs. Nevertheless, the facts relevant to this Order are limited and so they will be discussed as necessary along with the Court's analysis. CCS challenges the jury's answers to Special Verdict Questions Nos. 1, 3, and 4 (the jury found in its favor on Question No. 2).

3.1 **Special Verdict Question No. 3**

CCS's first argument is that Heling did not carry her burden to show that it failed to send the October 17, 2014 letter (the "Letter"). (Docket #59 at 7-9). This burden was established by the Court's ruling on summary judgment. (Docket #43 at 12-15). The parties have presented arguments as to the issue which the Court declined to reach in that summary judgment ruling, namely whether Section 1692g(a) mandates that the required notice be sent *to* a consumer. *See* (Docket #61 at 3-8; Docket #62 at 1-5).

As with summary judgment, the Court need not reach the issue here. Viewing the evidence strictly in favor of Heling, and determining only whether the jury's verdict *could* be based on that evidence, the verdict must stand. Heling adequately undermined CCS's exhibits and the testimony of its employees such that the jury could have reasonably disbelieved all of that evidence and found that the Letter was not sent. The Court addresses each piece of evidence in turn.

First, CCS offered Exhibit 11, which was purportedly a copy of the Letter. The fact that CCS obtained that piece of paper and brought it to trial has no bearing on whether any letter, identical or otherwise, was actually sent on October 17, 2014. Similarly, CCS presented testimony that the Letter was

printed automatically by its computer system upon receipt of Heling's debt for collection. This too is no evidence of sending anything, but at best evidence that the account was received on that day.[2]

Second, recognizing the ineffectiveness of those exhibits standing alone, CCS offered supporting testimony. Vicki Barclay ("Barclay"), one of its collectors, testified that on October 17, 2014, she was working alone and stuffed a number of letters, including the Letter, into envelopes. She further testified that she took those items to the post office. However, Heling called Barclay's precise recollection of that day, two years prior to trial, into question. Heling showed that Barclay's memory was suspiciously ironclad in light of the over two years that had elapsed and the nearly 13,000 separate accounts she had worked on in that intervening period. In fact, Barclay dug this hole deeper by stating that it was her *independent recollection* that October 17, 2014 was a Friday; such unbelievable specificity harmed, rather than helped, her credibility. Given Barclay's lack of credibility, the jury was entitled to entirely disregard her testimony. *See* (Docket #54 at 7-9).

Finally, CCS presented the testimony of Donald Waage, its owner. Waage did not testify directly about sending the Letter. Instead, he testified

---

[2]CCS's misunderstanding of this important point is shown in its argument. In its reply brief, CCS states:

> Exhibit 19, the agency's Account Transaction History, shows its first entry as the "New Account" posted by Vicky Barclay ("VB") on 10/17/2014 for $197—the exact date that the letter (Exhibit 11) is dated showing a balance owing to the dentist of $197.00. Could the record of posting the account, *and sending the letter be more clear*?

(Docket #62 at 4) (emphasis added). Exhibit 11 and the computer system evidence support, but do not require, a jury finding that the first clause of the last sentence is true. Neither provides any support for the second (emphasized) clause.

in support of the automatic letter-printing software discussed above. His testimony also did more harm than good for CCS. Heling pointed out that in completing CCS's discovery responses, Waage had admitted that all communications CCS sends are listed in the consumer's account notes. Yet, in Heling's case, the Letter is nowhere listed on her account notes. Instead, CCS claimed that because the Letter was printed automatically, it was intentionally omitted from the account notes. CCS also stated its discovery responses, made under oath, were simply mistaken. Waage's testimony not only provided no affirmative evidence of sending, it undermined both Waage and Barclay's credibility as to efficacy of the automatic printing software. Further, the jury was entitled to simply discredit Waage's trial testimony entirely and rely only on CCS's discovery responses, which admitted that in light of its own account notes, there was no evidence that the Letter existed.

As shown above, a reasonable jury could have discounted all of CCS's evidence of sending the Letter. Without any evidence of sending, the jury's answer to Question No. 3 of the Special Verdict Form is proper. *See Mahon v. Credit Bureau of Placer Cnty. Inc.*, 171 F.3d 1197, 1201-02 (9th Cir. 1999); *Anderson v. Credit Bureau Collection Servs., Inc.*, 422 F. App'x 534, 535-38 (7th Cir. 2011). The Court will, therefore, decline to direct a contrary verdict.

### 3.2 Special Verdict Question No. 1

CCS's second contention is that Heling failed to show that CCS misrepresented the amount of her debt by adding a $20.00 judgment satisfaction fee to the balance it told her was owed. (Docket #59 at 9-12). This issue rests on a conversation between Heling and Nancy Wagner ("Wagner"), another CCS collector. Heling claims that Wagner gave her a single figure for the total debt balance, which included the satisfaction fee, without disclosing the existence of the fee. Wagner and CCS counter that the inclusion of the fee,

and Heling's options for paying it (or not), were explained during the call. CCS adds that an e-mail string between its counsel in the collection case, Andrew Morgan ("Morgan"), and Heling further clarifies the optional nature of the fee. *See* (Docket #43 at 8-10). CCS further argues that Heling cannot establish that the fee was not permitted by law or otherwise a misrepresentation. It maintains that the fee was proper under Wisconsin law and was correctly added to the balance because it would be "part and parcel to paying the judgment." (Docket #59 at 11).

CCS' argument misses the mark in two respects. First, as the jury was instructed, violations of the FDCPA are assessed from the perspective of an unsophisticated consumer. (Docket #54 at 13-14). Thus, even though the Morgan e-mails seem to explain the fee, the jury could have concluded that the e-mails had little or no bearing on what occurred in Heling's conversation with Wagner. They were entitled to disregard the Morgan e-mails in this fashion.

Second, CCS misunderstands the nature of Heling's claim. Heling was not required to show that the satisfaction fee would *never* be appropriate, either before or after the Wagner conversation. Instead, if Heling adduced evidence that the actual balance of her debt was less than what Wagner told her, *at the time Wagner spoke*, a misrepresentation would have occurred and she could succeed on the claim. Heling did so. She took great pains to show that the satisfaction fee was not incurred as of the time of the call. Heling further showed that, whether or not the fee would ultimately be "part and parcel" of paying the debt, as of the instant she spoke to Wagner, the fee was

not owed.³ Heling also offered evidence of CCS's own credit reporting activity, in which it told the credit bureaus (and the wider world) that Heling owed a debt $20.00 less than the figure Wagner stated.

In the credibility battle between Heling and Wagner over what was said regarding the fee, the jury was within its province to believe Heling. It was further entitled to find that CCS had inflated the balance via the satisfaction fee during the Wagner conversation. The Court will not disturb the jury's answer to Special Verdict Question No. 1.

### 4. CONCLUSION

In light of the foregoing, the Court must deny CCS's motions for directed verdict and for a new trial as to the liability questions. Its final argument, that the award of statutory damages be set aside, is moot.

Accordingly,

**IT IS ORDERED** that the defendant's combined motions for directed verdict and new trial (Docket #59) be and the same are hereby **DENIED**.

The Clerk of the Court is directed to enter judgment in favor of the plaintiff in accordance with the jury's verdict of October 25, 2016 (Docket #58).

---

³This conclusion is logically consistent with the status of the underlying collection case. The total $20.00 fee was actually a combination of two amounts: $5.00 paid to the court to accept the satisfaction document, and $15.00 CCS was entitled to recover under Wisconsin law for its attorney's fees incurred in connection with that filing. Neither amount would actually be owed by Heling until those actions were taken by CCS, and as of the time of the Wagner conversation, they had not. By way of analogy, Heling did not owe her dentist any amounts until he actually performed the services he promised. The dentist could not seek collection of a teeth cleaning co-pay before he cleaned her teeth.

Dated at Milwaukee, Wisconsin, this 23rd day of January, 2017.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge