# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LORI HELING,

                Plaintiff,

v.

CREDITORS COLLECTION SERVICE INC.,

                Defendant.

Case No. 15-CV-1274-JPS

**ORDER**

## 1.    INTRODUCTION

On January 23, 2017, the Court denied Defendant's post-trial motions and entered judgment on the jury's verdict in the amount of $500. (Docket #64 and #65). On February 6, 2017, Plaintiff filed a motion seeking to collect her attorney's fees from Defendant pursuant to the Fair Debt Collection Practices Act's ("FDCPA") fee-shifting provision. (Docket #67); 15 U.S.C. § 1692k(a)(3). The motion is fully briefed, (Response, Docket #71; Reply, Docket #74), and for the reasons explained below, it must be granted.

## 2.    LEGAL STANDARDS

Plaintiff is entitled to an award of attorney's fees pursuant to the FDCPA's fee-shifting provision. 15 U.S.C. § 1692k(a)(3).[1] As with all

---

[1] Defendant cannot contest that Plaintiff is entitled to an award of fees as the prevailing party. Plaintiff has obtained judgment for an award of statutory damages, which is all that is required to trigger the FDCPA's fee provision. (Docket #65); *Dechert v. Cadle Co.*, 441 F.3d 474, 475 (7th Cir. 2006) ("The plaintiff was entitled to an award of fees and costs only if his suit could be characterized as a 'successful action to enforce the foregoing liability,' 15 U.S.C. § 1692k(a)(3), meaning liability for either actual or statutory damages. The general, indeed all but invariable, rule is that to be a prevailing party and therefore entitled to an award of fees and costs, you either must obtain a judgment that provides you with

requests for attorney's fees, the Court applies the lodestar analysis. *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010). The lodestar "is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended." *Id.* Once reached, the Court may "adjust that figure to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Schlacher v. Law Off. of Phillip J. Rotche & Assoc., P.C.*, 574 F.3d 852, 856-57 (7th Cir. 2009). The Court must "provide a clear and concise explanation for its award, and may not 'eyeball' and decrease the fee by an arbitrary percentage because of a visceral reaction that the request is excessive." *Id.* at 857. Plaintiff bears the burden "of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

3. **ANALYSIS**

Plaintiff seeks over $77,000 in fees for her attorneys' work in this case. (Docket #74 at 16). Defendant believes she is entitled to no more than $1,500. (Docket #71 at 24). The Supreme Court holds that "[a] request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437. Despite the vast gulf between the parties' positions and their lengthy briefs, the Court takes this instruction to heart and will keep this Order concise. The Court will first dispense with Defendant's irrelevant policy arguments, and then conduct the actual fee analysis using the lodestar method.

---

formal relief, such as damages, an injunction, or a declaration that you can use if necessary to obtain an injunction or damages later, or must obtain a settlement that gives you similar relief."). In these circumstances, a fee award is not merely appropriate, but mandatory. *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995).

**3.1 Defendant's Policy Concerns**

Many of Defendant's arguments are policy complaints which are inappropriate for purposes of the motion before the Court and may be readily dispatched. First, Defendant contends that no one would actually pay a lawyer $77,000 to obtain a recovery of $500, which Plaintiff received via the jury's verdict. *See* (Docket #65). This is true and at once relevant and irrelevant for present purposes. It is irrelevant to the instant case because the FDCPA mandates that a prevailing plaintiff be awarded their reasonable attorney's fees, regardless of the amount recovered or the fees sought. The observation is nonetheless relevant to all fee-shifting statutes, including the FDCPA, because it reflects Congress' intention to employ consumers and consumers' rights attorneys as private attorneys general. *See Lynch v. City of Milwaukee*, 747 F.2d 423, 429 (7th Cir. 1984). Congress uses those persons to enforce statutes for which it does not wish to devote governmental resources, which would of course be at the public's expense. Rather, the scheme ensures that a statute can be vigorously enforced despite potentially limited damages or inherent difficulties in proving any violations. *See Anderson v. AB Painting and Sandblasting, Inc.*, 578 F.3d 542, 545 (7th Cir. 2009).[2]

---

[2]*Anderson* explained the issue another way:

> Because Congress wants even small violations of certain laws to be checked through private litigation and because litigation is expensive, it is no surprise that the cost to pursue a contested claim will often exceed the amount in controversy. That is the whole point of fee-shifting—it allows plaintiffs to bring those types of cases because it makes no difference to an attorney whether she receives $20,000 for pursuing a $10,000 claim or $20,000 for pursuing a $100,000 claim. Fee-shifting would not "discourage

Defendant further argues that Plaintiff's damage award in this case was nominal or *de minimis*, and thus her fee award should be drastically reduced. The Court disagrees that the award was so negligible. As discussed more fully below, though Plaintiff received only $500, an objectively small sum for a jury-tried case, it was half of the maximum statutory damages award she could have obtained. *See supra* Part 3.3. The instant case is unlike *Farrar*, where the plaintiff sought $17 million in damages for violation of his constitutional rights, and received a nominal award of just $1. *Farrar v. Hobby*, 506 U.S. 103, 107 (1992). While the *Farrar* Court concluded that the plaintiff was indeed a prevailing party entitled to a fee award, it held that [i]n some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party." *Id.* at 115. In other words, "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." *Id.* Plaintiff's $500 recovery shows that she proved at least a portion of her possible damages. It is far greater than a mere nominal award and so renders *Farrar*'s holding inapposite.

Finally, Defendant asserts that "it is the Defendant that has really suffered [sic] harmed." (Docket #71 at 23). "[E]ven a denial outright of any fees," Defendant continues, "will not alleviate the harm and cost that the

---

petty tyranny" if attorney's fees were capped or measured by the amount in controversy.

*Anderson*, 578 F.3d at 545.

Defendant has had to bear, merely to prove that Defendant was right and that Plaintiff was wrong—her claimed violations were technical and not worth the large sums demanded from the beginning and that continued thereafter." *Id*. Defendant further laments the public's cost in Court and jury time spent on this case, concluding that "it is time for the Plaintiff's attorneys, the ones who caused this injustice in the first place, to suffer some too. Their fees should not be paid. They should be left to suffer along with the Defendant, the Plaintiff, and the public." *Id.* at 23-24.

The Court rejects this flawed analysis in its entirety. Every aggrieved party, whether in the largest civil rights case or the smallest consumer rights action, deserves their day in court should it become necessary. Further, according to the jury, Defendant was not right on the only issue of moment—whether its conduct violated the FDCPA. By prevailing on her FDCPA claim, Plaintiff became entitled to a mandatory award of attorney's fees. The Court takes little heed of the parties' disputes about settlement, but to the extent they bear any weight, it appears to the Court that Defendant was at least as intractable as Plaintiff on the matter. Ultimately, it appears Defendant's primary complaint is with the fee-shifting nature of the FDCPA itself, not Plaintiff or her attorneys. It offers this concern in the wrong forum. Should Defendant wish to change that fundamental quality of the FDCPA, it must take its concerns to Congress, not the courts.[3]

---

[3]It appears that many of Defendant's policy arguments (as well most of its opposition brief generally) are simply lifted from the brief which its counsel used in the fee dispute in the *Gagliano v. State Collection Service* case from the spring of 2016. *Compare* (Docket #71) *with Gagliano v. State Collection Servs., Inc.*, 14-CV-1512-WED (E.D. Wis.) (Docket #55). Magistrate Duffin correctly rejected these meritless positions. *Gagliano v. State Collection Servs.*, 14-CV-1512-WED, 2016 WL 2853538 (E.D. Wis. May 13, 2016). It appears Defendant thought it could simply try these

### 3.2 Lodestar

As noted above, the lodestar analysis involves setting a reasonable hourly rate and the number of hours which should have reasonably been expended to litigate the claims at issue. Those figures are multiplied to achieve the lodestar, which may then be adjusted for various reasons.

#### 3.2.1 Reasonable Hourly Rate

A reasonable hourly rate is

> one that is derived from the market rate for the services rendered. We presume that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate. The fee applicant bears the burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984). If the fee applicant satisfies this burden, the burden shifts to the other party to offer evidence that sets forth a good reason why a lower rate is essential.

*Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (quotations omitted). The Court can apply other factors to determine an appropriate rate, include a lawyer's years of experience. *Houston v. G.C. Sec. Servs., Inc.*, 820 F.3d 855, 860 (7th Cir. 2016). If Plaintiff does not carry her burden to prove that the requested rates are appropriate, the Court may independently set a reasonable rate. *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014).

Plaintiff states that her counsels' billing rates are as follows: $450 per hour for Larry Smith ("Smith"), a practitioner with 23 years' experience, $385 per hour for David Marco ("Marco"), with 16 years' experience, $300

---

arguments again on a different judge and obtain a different result. Defendant is incorrect in that regard.

per hour for Sara Collins ("Collins"), with 14 years' experience, and $130 per hour for paralegal work. Plaintiff claims these fees are reasonable based on the District of Columbia's *Laffey* matrix, fees that her counsel have received in similar cases, and a United States Consumer Law Attorney Fee Survey Report issued for 2013-14. *See* (Docket #67-3, #67-5, #67-6, and #67-7).[4] The *Laffey* matrix is "a chart of hourly rates for attorneys and paralegals in the Washington, D.C. area that was prepared by the United States Attorney's Office for the District of Columbia to be used in fee-shifting cases." *Pickett*, 664 F.3d at 649. The Seventh Circuit has not adopted the matrix and is critical of it. *Id.* at 649-50. The Court sees no reason to rely on a fee chart prepared for litigation in Washington, D.C. when other indicators of an appropriate local rate are available.

The first such indicator is counsel's own prior fee awards. In this Court, they have previously been awarded fees at rates of $350-375 for Smith, $250-275 for Marco, and $105 for paralegal work. *See Vang v. Cal. Recovery Sys., Inc.*, 11-CV-192-JPS (E.D. Wis.) (Docket #10 and #12); *Moreland v. Dorsey Thornton and Assoc., LLC*, 10-CV-867-JPS (E.D. Wis.) (Docket #10 and #12); *House v. Shapiro & Price*, 10-CV-842-JPS (E.D. Wis.) (Docket #11 and #13); *Wright v. Global Check & Credit Servs. LLC*, 10-CV-129-JPS (E.D. Wis.) (Docket #8 and #10). Simply applying inflation to these figures suggests that the modern equivalent of these rates would be at least $400 for Smith, $300 for Marco, and $115 for paralegal work. *See* Bureau of Labor Statistics, CPI Inflation Calculator, *available at*: https://www.bls.gov/

---

[4]Defendant claims that Plaintiff must provide her fee agreement with her attorneys to make a valid claim for fees. A retainer agreement is certainly useful evidence of an appropriate hourly rate, but the Seventh Circuit has given no indication that one is required. *See Montanez*, 755 F.3d at 553-54; *Schalcher*, 574 F.3d at 858.

data/inflation_calculator.htm. The consumer lawyer fee survey states that in Milwaukee in 2013-14, the average hourly rate for an attorney of Smith's experience was $400, one of Marco's experience was $425, and one of Collins' experience was $300. (Docket #67-7 at 130).[5] The overall median rate in Milwaukee was $400 at the time. *Id.*

Defendant claims that this evidence fails to establish a reasonable rate for Plaintiff's counsel, and suggests that Plaintiff's counsel should command only $200-250 per hour. Other than its own conjecture, however, Defendant submits no evidence that its lower figure has any relation to market rates. The Court finds that Plaintiff has carried her burden to show appropriate market rates for her counsel's time, and will award her fees based on the rates she proposes.

### 3.2.2 Reasonable Hours

Defendant contests a number of specific entries in Plaintiff's fee bill. Though Plaintiff is entitled to have her attorneys' bill paid by Defendant, Defendant "is not required to pay for hours that are excessive, redundant, or otherwise unnecessary." *Johnson v. GDF, Inc.*, 668 F.3d 927, 931 (7th Cir. 2012). In this vein, Plaintiff's counsel is expected to exercise "billing judgment" when presenting their bill to the Court, by "winnowing the hours actually expended down to the hours reasonably expended." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 552 (7th Cir. 1999) (quotation omitted). In other words, "hours that an attorney would not properly bill to his or her client in the private sector cannot properly be billed to the adverse party under a fee-shifting statute" like the FDCPA. *Id.* The

---

[5]The oddity of having a higher rate for Marco at a lower experience level than Smith may be due to the relatively small sample size for consumer rights lawyers in Milwaukee with over 20 years' experience.

"winnowing" process involves excluding not only hours "that would normally not be billed to a paying client, but also those hours expended by counsel on tasks that are easily delegable to non-professional assistance." *Id.* at 553.

Plaintiff's initial demand is for $73,429.50 in fees for 203.8 hours of work. This figure is divided into $4,050 for Smith (9 hours), $52,013.50 for Marco (135.1 hours), $16,950 for Collins (56.5 hours), and $416 for paralegal work (3.2 hours). The Court concludes that many of these hours were unreasonably expended in what can only be described as a mine-run FDCPA case. The complaint is a mere forty-five paragraphs. (Docket #1). Though a motion to dismiss was filed, the *Rooker-Feldman* issue it raised was not novel or particularly complex; the Court disposed of it in a ten-page order. (Docket #17). Given the limited claims that survived the motion, discovery was simple and short, with only a handful of depositions taken. *See* Exhibits to the parties' summary judgment briefing (Docket #23-#26 and attachments; Docket #32 and attachments). Summary judgment was also relatively brief, and the Court addressed it in just seventeen pages. Trial itself took less than two full days, with five witnesses and less than thirty exhibits presented across barely six hours. (Docket #60).

The hours Plaintiff's attorneys expended addressing each of these tasks were excessive. Plaintiff's attorneys are experienced consumer rights litigators and are receiving an hourly rate commensurate with that experience. By the same token, they cannot charge their client, or Defendant by way of the instant motion, at the rate of a novice in addressing issues they have likely seen on numerous prior occasions. Much of their motion practice suffers from this defect; they spent dozens of hours responding to each of the dispositive motions, far in excess of what was appropriate or

necessary. The same is true of their pre-trial preparations. For example, Plaintiff's attorneys spent no less than seven hours preparing opening and closing arguments which together lasted approximately forty minutes.

In the end, excessiveness pervades Plaintiff's fee bill. The Court declines to waste its time by addressing this problem with respect to each individual line item of Plaintiff's seventeen-page bill. *See Divane v. Krull Elec. Co.*, 319 F.3d 307, 316-17 (7th Cir. 2003). Rather, in light of the nature and history of this case, and the experience of Plaintiff's attorneys, the Court believes that no more than 120 hours could have been reasonably expended in litigating this matter. This falls in line with the hours expended in other jury-tried FDCPA cases, as surveyed by Magistrate Duffin in his *Gagliano* decision. *Gagliano*, 2016 WL 2853538, at *2-4. When multiplied by the reasonable rates discussed above, the final lodestar figure becomes $42,426.[6]

By making this reduction, the Court does not suggest that Plaintiff's attorneys did not actually work for each of the hours they have presented. However, the Court is not charged with compensating them for their actual work, but only their reasonable work. The Court itself is subject to reasonable time constraints on its work in light of its duties to the parties and the public, and the lawyers practicing before it must adhere to the same standard.

### 3.3 Lodestar Adjustment

Plaintiff is entitled to an award of reasonable attorney's fees, and "[t]here is a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award." *Pickett*, 664 F.3d at 639 (citing *Perdue v.*

---

[6]The ratio of hours attributed to each biller has been maintained in arriving at this figure. *See* (Docket #67-2 at 2).

*Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)). Nevertheless, "[i]n setting a reasonable fee, the district court must determine whether 'the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.' *Hensley*, 461 U.S. at 434. A plaintiff who achieves 'excellent results' should receive the entire lodestar, but where 'a plaintiff has achieved only partial or limited success,' the lodestar 'may be an excessive amount.' *Id.* at 435–36." *Montanez*, 755 F.3d at 556. The degree of success is determined "not only in the amount of the recovery but also in terms of the principle established and the harm checked." *Zagorski v. Midwest Billing Servs., Inc.*, 128 F.3d 1164, 1167 (7th Cir. 1997).[7]

Plaintiff's overall degree of success is best viewed by assessing her individual claims and damages. Defendant is correct that it is difficult to

---

[7]These statements of law reflect the relevant Supreme Court precedent. The *Hensley* Court provided twelve specific factors which may aid in making a proper lodestar adjustment:

> 1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.3. These factors are generally subsumed within setting the lodestar itself, as is true in the instant case. *Anderson*, 578 F.3d at 544. In *Farrar*, the Supreme Court emphasized "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar*, 506 U.S. at 114 (quoting *Hensley*, 461 U.S. at 436).

separate the hours billed based on the claim or category of damages pursued—*i.e.*, the letter claim vs. the misleading statement claim, statutory vs. actual damages. The Seventh Circuit instructs that "[n]o algorithm is available for adjusting a lodestar to reflect partial or limited success. When the judge cannot easily separate the successful and unsuccessful work, there is nothing to do but make an across-the-board reduction that seems appropriate in light of the ratio between winning and losing claims." *Montanez*, 755 F.3d at 557 (citations and quotations omitted).

As to Plaintiff's claims, it is unclear precisely what claims she initially pursued in her complaint. However, upon Defendant's motion to dismiss, Plaintiff clarified that she presented three claims: 1) Defendant mispresented the amount of her alleged debt; 2) Defendant lied to her about whether the judgment against her could be vacated; and 3) Defendant failed to send her a letter containing the disclosures required by the FDCPA. (Docket #14 at 7). These claims were litigated through summary judgment and trial. The jury found in Plaintiff's favor on the first and third claim. (Docket #58 at 1). As to her claims, then, it appears that Plaintiff was mostly successful.

With respect to Plaintiff's damages, the FDCPA permitted the jury to award her actual damages, in an unlimited amount, and statutory damages, in an amount no greater than $1,000. 15 U.S.C. § 1692k(a). Plaintiff received $500 in statutory damages. (Docket #58 at 2). The Court agrees with Defendant's assertion that Plaintiff's failure to recover actual damages, sought by her throughout the case and abandoned on the eve of trial, should count against Plaintiff for purposes of a lodestar adjustment. But for how much? Defendant suggests that Plaintiff's actual damages claim would have been at least as much as the value of her attorney's fees, namely

$75,000. Plaintiff offers no advice on an appropriate reduction, contending that she was not in fact unsuccessful, but merely exercised her right to forgo a difficult-to-prove aspect of her damages.

The Court finds that Defendant's figure likely wildly overstates the unpursued actual damages claim, but without even a ballpark figure from Plaintiff, it has no way to know precisely how the claim should be valued. Overall, Plaintiff was partially successful in vindicating the claims and damages her lawsuit entailed. The Court concludes that an appropriate, across-the-board reduction for Plaintiff's partial success is twenty percent, or $8,485.20.[8]

The parties devote much of their briefing to trading barbs about the settlement negotiation process (or lack thereof) in this matter. The Court mentions this only to note that it plays no part in its ultimate determination of an appropriate fee. The Court of Appeals advises that "[s]ubstantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorney's fees." *Moriarty v. Svec*, 233

---

[8]The "principle established" and "harm checked" factors offer little guidance here. The principles and harms involved in an FDCPA case are certainly less weighty than those potentially implicated in a civil rights case. Still, the Court believes that the principles and harms should be viewed in light of the purpose behind the statute creating the cause of action. The FDCPA was meant to deter abusive debt collection activity. 15 U.S.C. § 1692(a). While Defendant's conduct falls short of being abusive, the jury found that it violated the law which is aimed directly at its business practices and has been in force for decades. Who knows whether the principle established by Plaintiff's success here will have an appreciable effect on Defendant's FDCPA compliance practices. If the trial testimony of its witnesses is to be believed, those practices have remained unchanged for years. In the end, Plaintiff cannot be faulted if Defendant chooses to continue to believe that it did nothing wrong and that its practices are FDCPA-compliant.

F.3d 955, 967 (7th Cir. 2000). This consideration accounts for "[a]ttorney's fees accumulated after a party rejects a substantial offer," because those fees "provide minimal benefit to the prevailing party." *Id.* An offer is considered "substantial" if it "appears to be roughly equal to or more than the total damages recovered." *Id.* This exercise has no application to this case, because no settlement offers were ever made, much less any "substantial" offers. The Court will, therefore, not hold the lack of settlement against Plaintiff or Defendant in adjusting the lodestar.

Finally, the lodestar is subject to an upward adjustment for Plaintiff's expense in litigating the fee issue. The Seventh Circuit holds "that time spent in establishing the entitlement to and amount of the fee is compensable." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (7th Cir. 2008). As with the above lodestar analysis, the reasonableness of the fee is the overarching inquiry. *Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 893-94 (7th Cir. 2001). One factor in this determination is a comparison between the hours requested for the merits litigation and the hours spent preparing the fee petition. *Id.* Despite disputing numerous specific line-items in Plaintiff's attorneys' bill, Defendant offers no complaint about the time spent preparing the fee motion. As to the motion itself, Plaintiff requests 4.7 hours at Marco's rate of $385, or $1,809.50. (Docket #67-2 at 3). For her reply in support of the motion, Plaintiff seeks 10.1 hours, also at Marco's rate, or $3,888.50. The Court finds that this time is excessive. It cannot fathom how the reply was twice as onerous to prepare as the initial motion. Awarding $5,698 for the fee litigation would also be disproportionate to the $42,426 awarded for the merits litigation. The Court will, therefore, award Plaintiff $2,250 for her attorneys' efforts in litigating the fee.

### 4. CONCLUSION

Despite Defendant's assertion of "injustice," none is present here. (Docket #71 at 23). Defendant lost this case after more than a year of vigorous litigation. The FDCPA is a fee-shifting statute and Plaintiff is entitled to her fees, even if she achieved only a partial success. This Court agrees wholeheartedly with Magistrate Duffin's conclusion in *Gagliano*: "If a minor violation of the FDCPA necessities discovery and a jury trial to resolve, it would offend Congress' intent in passing the FDCPA to fail to reasonably compensate plaintiff's counsel for the time and effort needed to obtain redress for the consumer." *Gagliano*, 2016 WL 2853538, at *8. Plaintiff's motion for attorney's fees will be granted in the amount of $36,190.80

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for attorney's fees (Docket #67) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant shall pay to Plaintiff the amount of $36,190.80 as attorney's fees.

Dated at Milwaukee, Wisconsin, this 12th day of June, 2017.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge